# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50655

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2018

Lyle W. Cayce
Clerk

JERNARD GRIGGS,

Plaintiff - Appellant

v.

S.G.E. MANAGEMENT, L.L.C.; STREAM GAS & ELECTRIC, LIMITED, doing business as Stream Energy; STREAM S.P.E. G.P., L.L.C; STREAM S.P.E., LIMITED; IGNITE HOLDINGS, LIMITED, formerly known as Ignite Energy, Limited, doing business as Ignite, doing business as Ignite Powered by Stream Energy; CHRIS DOMHOFF; ROB SNYDER; PIERRE KOSHAKJI; DOUGLAS WITT; STEVE FLORES; MICHAEL TACKER; DONNY ANDERSON; STEVE FISHER; RANDY HEDGE; LOGAN STOUT; PRESLEY SWAGERTY,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and WIENER and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

When Plaintiff-Appellant Jernard Griggs began working as an Independent Associate ("IA") for Ignite, he agreed to Ignite's Policies & Procedures, which includes an arbitration clause covering all claims between (1) any two or more IAs and (2) any IA and Ignite. The arbitration clause also gives the arbitrator the "sole power" to decide questions of arbitrability.

No. 17-50655

Despite that, Griggs brought a class action in federal court, asserting RICO claims against Defendants-Appellees Ignite, Stream, their related entities, and several other IAs (collectively, "Defendants"). The district court (1) ruled that the parties had agreed to arbitrate arbitrability; (2) compelled arbitration; and (3) stayed the case pending arbitration. After the case had been stayed for a year without Griggs having submitted his claims to arbitration, the court dismissed the case without prejudice. Griggs appealed; we have appellate jurisdiction; we affirm.

## I. Facts and Proceedings

Stream is a Texas electricity provider that markets its services through Ignite, its wholly owned subsidiary. Ignite is a multi-level marketing program that Griggs contends is an illegal pyramid scheme in which the participants (the IAs) are destined to lose money.[1] This court, sitting en banc, recently described these entities:

> Stream's marketing arm, Ignite, operates a multi-level marketing program in which IAs (1) sell energy to customers, and (2) recruit other individuals to join as IAs who in turn sell energy to customers and recruit individuals to join as IAs. Under the IA program, Ignite charges individuals for the right to sell Stream services to customers and to recruit IAs.[2]

In that case, *Torres v. S.G.E. Management*, several IAs brought a class action against Stream, Ignite, and several particularly successful IAs.[3] The district court compelled arbitration, but this court reversed, holding that the arbitration agreement was unenforceable.[4] The district court, on remand,

---

[1] *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 632–33 (5th Cir. 2016) (en banc), *cert. denied*, 138 S. Ct. 76 (2017). Griggs refers to these participants as "Ignite Associates."

[2] *Id.* at 633.

[3] *Id.* at 634; *Torres v. S.G.E. Mgmt., L.L.C.*, 397 F. App'x 63, 64 (5th Cir. 2010).

[4] *Torres*, 397 F. App'x at 68.

No. 17-50655

certified a class, but only for those IAs who had joined Ignite between January 1, 2005 and April 2, 2011.[5] The court explained that Ignite had amended the arbitration clause required for new IAs, effective April 3, 2011, eliminating the defect.[6] This court upheld class certification en banc.[7]

Griggs joined Ignite as an IA on March 22, 2012, obviously after the amended arbitration clause took effect. When Griggs became an IA, he agreed to Ignite's "Policies & Procedures" and "Terms & Conditions." Those two documents and a third one titled the "Compensation Plan," were parts of the Independent Associate Agreement ("Agreement"). The Compensation Plan is not in the record. The Policies & Procedures states that if it conflicts with another part of the Agreement, the Policies & Procedures controls.

The Policies & Procedures contains a provision requiring arbitration of "any claim, dispute or other difference between two or more IAs or between any IA(s) and Ignite or its affiliates, or any other claim or dispute of any kind arising under or in any way related to these Policies & Procedures or any other part of the [Agreement]." Its arbitration clause incorporates the rules of the American Arbitration Association and states that "the arbitrator will have the sole power to decide any question about the arbitrability of any claim."

In May 2015, Griggs sued the various entities comprising Stream and Ignite, as well as several individuals who were either employees of Stream and Ignite or "Presidential Directors." Presidential Directors are IAs "at the very top of the pyramid" who have been financially successful as a result of Ignite. Griggs alleged violations of the Racketeer Influenced and Corrupt

---

[5] *Torres v. SGE Mgmt. LLC*, No. 4:09-CV-2056, 2014 WL 129793, at *10 (S.D. Tex. Jan. 13, 2014), *aff'd*, 838 F.3d 629 (5th Cir. 2016) (en banc).

[6] *Id.*

[7] *See Torres*, 838 F.3d at 646.

No. 17-50655

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Defendants moved to compel arbitration, and the magistrate judge issued a report and recommendation concluding that the arbitration agreement was valid and that the parties had agreed to arbitrate arbitrability.[8] The district court granted the motion to compel arbitration and stayed the case pending arbitration.[9]

The case remained stayed for more than a year, during which time Griggs refused to arbitrate. The district court ordered Griggs to show cause why the case should not be dismissed for want of prosecution. Griggs responded:

> Griggs anticipated that this Court would have already dismiss[ed] this case for want of prosecution because this Court left him only an arbitration which he has not pursued. So, Griggs states the following for the Court's consideration:
>
> 1.  Griggs understands and appreciates this Court's order compelling arbitration. Griggs believes that the Court cons[idered] all arguments before it ruled.
>
> 2.  However, Griggs disagrees with this Court's conclusion that this matter must go to arbitration.
>
> 3.  Griggs will not pursue arbitration.
>
> 4.  Griggs stands ready to litigate this case before this Court to a conclusion.

---

[8] *Griggs v. SGE Mgmt., LLC*, No. A-15-CV-422-LY-ML, 2015 WL 11423656, at \*4–8 (W.D. Tex. Oct. 15, 2015).

[9] The district court adopted the magistrate judge's recommendation in its entirety. *Griggs v. SGE Mgmt., LLC*, No. 1:15-CV-422-LY, 2015 WL 11438110, at \*1–2 (W.D. Tex. Nov. 4, 2015).

4

No. 17-50655

. . .

Griggs and his counsel mean no offense to this Court. However, they respectfully disagree with the Court's arbitration order and Griggs will either litigate this matter now before this Court or will appeal when dismissed.

The district court then dismissed the case without prejudice, and Griggs appealed.

## II. ANALYSIS

Two issues are presented in this appeal: (1) whether there is appellate jurisdiction and (2) whether the district court was within its discretion to dismiss the case for failure to prosecute. We address each issue in turn.

### A. Appellate Jurisdiction

A plaintiff seeking to appeal an order compelling arbitration may only do so if that order is a "final decision with respect to an arbitration."[10] A final decision is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."[11] When "the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable."[12] In contrast, if a district court orders that a case be stayed pending arbitration instead of dismissing it, that order is not appealable.[13] Some circuits have held that district courts must stay a case when all claims

---

[10] 9 U.S.C. § 16(a)(3).

[11] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)).

[12] *Green Tree*, 531 U.S. at 89.

[13] 9 U.S.C. § 16(b)(1); *Green Tree*, 531 U.S. at 87 n.2.

are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright.[14]

### 1. Voluntary Dismissal Under Rule 41(a)

Defendants contend that Griggs voluntarily dismissed the case under Federal Rule of Civil Procedure 41(a). A voluntary dismissal of a case without prejudice is not a final appealable decision.[15] Griggs contests whether the dismissal was voluntary, explaining that he never invoked Rule 41(a).

There are three forms of voluntary dismissal under that Rule. The record does not indicate that all parties stipulated to dismissal.[16] Defendants had not answered or moved for summary judgment, so a court order was not required for Griggs to dismiss the case.[17] The question then is whether Griggs's response to the show-cause order amounts to a voluntary dismissal under Rule 41(a)(1)(i), which allows a plaintiff to dismiss an action by filing a notice of dismissal.

There is limited authority describing the notice requirements for a plaintiff to dismiss a case under Rule 41(a)(1)(i).[18] It is clear, however, that "[a] notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required."[19] In *Bierman v.*

---

[14] *Compare Katz v. Cellco P'ship*, 794 F.3d 341, 345–47 (2d Cir. 2015), *with Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

[15] *Marshall v. Kan. City S. Ry. Co.*, 378 F.3d 495, 499–500 (5th Cir. 2004) (citing *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir. 1978)).

[16] *See* Fed. R. Civ. P. 41(a)(1)(ii).

[17] *See Id.* R. 41(a)(2).

[18] This court has expounded somewhat on the requirements for a stipulated dismissal under Rule 41(a)(1)(ii), explaining that it can be an oral dismissal, despite that Rule's requirement that a dismissal be filed with the court. *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 195 (5th Cir. 1980). But this court has also held that an informal statement that a party would not pursue one claim was not sufficient to stipulate to dismissal of that claim. *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 951–52 (5th Cir. 1981).

[19] *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) (quoting *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015) (per curiam)).

*Tampa Electric Co.*, the district court ordered the plaintiff to file quarterly status reports, warning that if he did not, the court would dismiss the complaint.[20] After the plaintiff failed to comply and the court dismissed the case, the plaintiff insisted that his failure to file the reports amounted to a Rule 41(a) notice of dismissal.[21] This court disagreed, explaining that the order specifically stated that the case was dismissed for want of prosecution and therefore was not voluntary.[22]

In *Vincent v. A.C. & S., Inc.*, the plaintiff informed the district court that he had settled with the defendants. After that, the court ordered that the case would be dismissed without prejudice on stipulation of the parties, but could be reopened in ninety days if the settlement was not "consummated."[23] The parties stipulated to dismissal more than four months later.[24] This court stated on appeal that the earlier order was not a voluntary dismissal, but rather "a tentative termination of the . . . suit."[25] By informing the court that the case had settled, the plaintiff did not "instigate[] dismissal."[26] These cases indicate that a plaintiff's inaction is not sufficient to dismiss a case voluntarily.

Here, after the district court compelled arbitration and stayed the case in November 2015, the parties submitted a status report in February 2016, notifying the court that Griggs had not submitted the dispute to arbitration. More than a year later, the court again ordered a status report, and the parties confirmed in June 2017 that Griggs still had not submitted the case to arbitration. The court then ordered Griggs to show cause why it should not

---

[20] 604 F.2d 929, 930 (5th Cir. 1979).
[21] *Id.*
[22] *Id.* at 931.
[23] 833 F.2d 553, 554 (5th Cir. 1987).
[24] *Id.* at 555.
[25] *Id.*
[26] *Id.* at 556.

7

dismiss the case "for want of prosecution." Griggs responded that he "disagree[d] with th[e] Court's conclusion that this matter must go to arbitration," and informed the court that he would not "pursue" arbitration. He added that he "st[ood] ready to litigate this case[.]" Finally, Griggs stated "[d]ifferent district courts do not stay, but dismiss, allowing the plaintiff to appeal an order of arbitration. . . . Griggs will either litigate this matter now before this Court or will appeal when dismissed."

These statements do not serve as a notice of dismissal, but rather are statements of inaction. If the district court had not dismissed the case, it is unlikely that the parties would have understood that Grigg's response to the show-cause order dismissed the case. Because that response was not a "self-effectuating"[27] notice of dismissal, it was not a voluntary dismissal under Rule 41(a).

### 2. Dismissal Without Prejudice

We thus must determine whether the district court's dismissal without prejudice supports appellate jurisdiction.[28] This court has not expressly addressed whether a Rule 41(b) dismissal without prejudice is an appealable order, but it has exercised jurisdiction over appeals from such orders.[29]

Rule 41 contemplates that some dismissals might not fall "under this rule,"[30] so the question remains whether the fact that the dismissal was without prejudice itself deprives the court of jurisdiction. Several unpublished opinions of this court have held that a dismissal without prejudice is a final

---

[27] *Bechuck*, 814 F.3d at 291 (quoting *Amerijet*, 785 F.3d at 973).

[28] *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999) ("We must always be sure of our appellate jurisdiction and, if there is doubt, we must address it, *sua sponte* if necessary.").

[29] *See, e.g.*, *Martinez v. Johnson*, 104 F.3d 769, 771–72 (5th Cir. 1997); *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 212–13 (5th Cir. 1976).

[30] Fed. R. Civ. P. 41(b).

No. 17-50655

decision if all that is left for the plaintiff to do is to submit the claim to arbitration.[31] The Third, Ninth, and Eleventh Circuits have reached the same conclusion.[32]

In *Green Tree Financial Corp.-Alabama v. Randolph*, the Supreme Court did not distinguish between dismissals with and without prejudice when holding that a decision "order[ing] the parties to proceed to arbitration, and dismiss[ing] all the claims before it, . . . is 'final' within the meaning of

---

[31] *See, e.g.*, *Westlake Styrene Corp. v. P.M.I. Trading, Ltd.*, 71 F. App'x 442, 442 (5th Cir. 2003) ("The dismissal without prejudice ended the litigation on the merits, by sending all the issues to arbitration and leaving the district court nothing more to do than execute the judgment. Thus, it was a final decision, and we have appellate jurisdiction."); *Brandom v. Gulf Coast Bank & Tr. Co.*, 253 F.3d 706 (5th Cir. 2001) (unpublished) ("A district court order compelling arbitration and dismissing a party's underlying claims is immediately appealable because it is a 'final decision with respect to an arbitration' within the meaning of the Federal Arbitration Act."). *See also Inv. Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 316 (5th Cir. 2002) ("[W]e conclude that appellate jurisdiction exists because Investment Partners seeks to void the entire arbitration clause on public policy grounds, albeit by means of attacking the remedy provision, and the Supreme Court disposed of a similar argument, without submitting the issue first to the arbitrators, in [*Green Tree*]."); *Hirras v. Nat'l R.R. Passenger Corp.*, 10 F.3d 1142, 1144 n.2 (5th Cir. 1994) ("While an order dismissing a complaint 'without prejudice' usually is not appealable because the plaintiff may file an amended complaint, the district court's order in this case is final and appealable because no amendment is possible. 'Without prejudice' here simply meant without detriment to [the plaintiff's] ability to present the claims to an arbitrator."), *vacated on other grounds by* 512 U.S. 1231 (1994).

[32] *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) ("Contrary to the defendant's argument that the district court order is not appealable because it had dismissed Hill's case without prejudice to reinstatement if arbitration was not completed successfully, the order was clearly a 'final order' insofar as compelled arbitration is concerned."); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002) ("We conclude that even though the District Court's order dismissed this case without prejudice and directed the parties to proceed with arbitration, the order was final and appealable."); *Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177, 1179 (9th Cir. 2001) ("[T]he district court's order and judgment sufficiently show that the court intended to close this case without precluding the parties from bringing a new action after completing arbitration. It is only in this sense that the dismissal was 'without prejudice,' and that is not enough to show that the dismissal was interlocutory rather than an appealable final decision." (citing *Green Tree*, 513 U.S. at 86–87)).

§ 16(a)(3), and therefore appealable."[33] The Court explained that the Federal Arbitration Act contemplates further proceedings after a dismissal for the court "to enter judgment on an arbitration award," which does not disturb finality.[34] The Court has recently explained that *finality* is "given a practical rather than a technical construction."[35]

Defendants rely on the Supreme Court's decision in *Microsoft v. Baker* and a recent Fourth Circuit decision, *Keena v. Groupon, Inc.*, to support their contention that a plaintiff may not appeal an order compelling arbitration merely by convincing the district court to dismiss the case.[36] In *Microsoft*, the plaintiffs filed individual claims and class allegations against Microsoft. The district court struck the class allegations, "effectively declining to certify the class."[37] The Ninth Circuit denied the plaintiffs permission to appeal that decision under Rule 23(f). The plaintiffs then stipulated to a voluntary dismissal, with prejudice, of their individual claims. On appeal following the voluntary dismissal, the plaintiffs sought a reversal of the district court's order striking the class allegations. The Ninth Circuit held that the voluntary dismissal was an appealable final decision and vacated the district court's denial of class certification. The Supreme Court reversed, rejecting the plaintiffs' "voluntary-dismissal tactic" on the ground that the plaintiffs' appeal

---

[33] *Green Tree*, 531 U.S. at 89; *see also Blair*, 283 F.3d at 602 ("*Green Tree* . . . does not draw any distinctions within the universe of dismissals.").

[34] *Green Tree*, 531 U.S. at 86.

[35] *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974)); *cf. Ameser v. Nordstrom Inc.*, 368 F. App'x 504, 507 (5th Cir. 2010) ("[T]his court's determination of its jurisdiction over a dismissal or denial without prejudice to refile varies depending on the circumstances[.] . . . Each case requires an examination of the finality of the underlying order.").

[36] *Microsoft*, 137 S. Ct. at 1715; *Keena v. Groupon, Inc.*, 886 F.3d 360, 364 (4th Cir. 2018).

[37] *Microsoft*, 137 S. Ct. at 1717 (Thomas, J., concurring).

sought review of the "inherently interlocutory" order striking the class allegations, not the review of final order dismissing the case.[38] The Court explained that 28 U.S.C. § 1291's "firm final-judgment rule is not satisfied whenever a litigant persuades a district court to issue an order purporting to end the litigation."[39] "Because [this] dismissal device subverts the final-judgment rule and the process Congress has established for refining that rule and for determining when nonfinal orders may be immediately appealed, . . . the tactic does not give rise to a 'final decision' under § 1291."[40]

The plaintiff in *Keena* brought a class action against Groupon, which then moved to enforce an arbitration clause. The district court ordered the parties to arbitrate and stayed the case pending arbitration.[41] A few weeks later, the plaintiff moved to amend that order, seeking dismissal with prejudice and "advis[ing] the court that she would not pursue arbitration because the costs of that process outweighed the potential recovery."[42] The district court agreed to amend the order and dismissed the case with prejudice. The Fourth Circuit, comparing these facts to the tactic in *Microsoft*, explained that "Keena unsuccessfully sought the district court's certification of an interlocutory appeal. Then, in another creative 'voluntary-dismissal tactic,' Keena's lawyer sought to preempt the denial of interlocutory review by voluntarily dismissing Keena's complaint with prejudice."[43] The "voluntary-dismissal tactic also fail[ed] to account for the longstanding principle that a party is not entitled to

---

[38] *Id.* at 1715 (majority op.) (quoting *Camesi v. Univ. of Pitt. Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013)).

[39] *Id.* at 1715

[40] *Id.* at 1712.

[41] *Keena*, 886 F.3d at 362.

[42] *Id.*

[43] *Id.* at 364.

appeal from a consensual dismissal of her claims."[44] The Fourth Circuit held that it did not have appellate jurisdiction because the dismissal order was not an appealable final decision under § 1291.[45]

Those two cases are distinguishable from this one. *Microsoft* involved a tactic to avoid Rule 23(f)'s procedure governing appeals of class-certification decisions. The plaintiff in *Keena* sought a voluntary dismissal with prejudice after the district court had stayed the case.

Here, unlike the "inherently interlocutory" nature of class-certification decisions discussed in *Microsoft*, the district court's dismissal in favor of arbitration does not raise a concern about "piecemeal appeals" because the dismissal ended the litigation on the merits.[46] And, unlike *Microsoft* and *Keena*, the instant dismissal was not voluntary, as we discussed in the preceding section. Griggs stated that he "stands ready to litigate this case before this Court to a conclusion" and "will either litigate this matter now before this Court or will appeal when dismissed." Those statements of inaction do not amount to a "voluntary-dismissal tactic" or a "consensual" dismissal of Griggs's claims.[47]

---

[44] *Id.* at 365.

[45] *Id.*

[46] *See Microsoft*, 137 S. Ct. at 1707 ("The tactic would undermine § 1291's firm finality principle, designed to guard against piecemeal appeals, and subvert the balanced solution Rule 23(f) put in place for immediate review of class-action orders."); *id.* at 1715 ("Plaintiffs in putative class actions cannot transform a tentative interlocutory order . . . into a final judgment within the meaning of § 1291 simply by dismissing their claims with prejudice." (emphasis added)); *id.* ("The one-sidedness of respondents' voluntary-dismissal device 'reinforce[s] our conclusion that [it] does not support appellate jurisdiction of prejudgment orders denying class certification.'" (quoting *Coopers & Lybrand*, 437 U.S. at 476)).

[47] *Keena*, 886 F.3d at 365 ("Keena's voluntary-dismissal tactic also fails to account for the longstanding principle that a party is not entitled to appeal from a consensual dismissal of her claims.").

No. 17-50655

The district court made clear over the course of a year and a half that it would take no action in this case. If Griggs took the court's dismissal without prejudice as an invitation simply to re-file, he would have obtained the same result. The district court's action "ended the litigation on the merits, by sending all the issues to arbitration and leaving the district court nothing more to do than execute the judgment. Thus, its order was a final decision, and we have appellate jurisdiction."[48]

### B. Dismissal for Failure to Prosecute

Rule 41(b) authorizes the district court to dismiss an action *sua sponte* for failure to prosecute or comply with a court order.[49] We review for abuse of discretion.[50] When a dismissal is without prejudice but "the applicable statute of limitations probably bars future litigation, our examination is searching, and we review the dismissal as we would a dismissal with prejudice."[51] Neither party's briefing discusses whether the heightened standard applies in this case. Even under the more exacting standard, however, Defendants would prevail.

Dismissal with prejudice is appropriate only when there is "a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice."[52] "In most

---

[48] *Westlake Styrene Corp.*, 71 F. App'x at 442; s*ee Green Tree*, 531 U.S. at 521 ("We therefore conclude that where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable.").

[49] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988).

[50] *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008).

[51] *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016) (citing *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (per curiam) (internal quotation omitted)).

[52] *Gates v. Strain*, 885 F.3d 874, 883 (5th Cir. 2018) (quoting *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 252 (5th Cir. 1984)).

No. 17-50655

cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct."[53] Here, there is a clear record of intentional delay and contumacious conduct.

After the district court granted Defendants' motion to compel arbitration and stayed the case, Griggs persistently refused to arbitrate as ordered. Specifically, a status report submitted three months after the arbitration order stated: "Plaintiff has not submitted the case to arbitration." More than a year after that, another status report explained that "plaintiff has not submitted the dispute to arbitration." When the district court ordered Griggs to show cause why the case should not be dismissed "for want of prosecution" he responded that he "disagree[d] with this Court's conclusion that this matter must go to arbitration," "[would] not pursue arbitration," and "[stood] ready to litigate this case before this Court to a conclusion." The district court was well within its discretion to dismiss this case for want of prosecution in response to Griggs's disobedience to its prior order.[54]

---

[53] *Stearman v. Comm'r*, 436 F.3d 533, 535 (5th Cir. 2006) (citing *Tello v. Comm'r*, 410 F.3d 743, 744 (5th Cir. 2005), *cert. denied*, 546 U.S. 873 (2005)).

[54] Generally, "[u]nder the final judgment appealability rule, a party may obtain review of prejudicial adverse interlocutory rulings upon his appeal from adverse final judgment, at which time the interlocutory rulings (nonreviewable until then) are regarded as merged into the final judgment terminating the action." *Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1102 (5th Cir. 1983) (citing 9 Moore's Federal Practice, ¶ 110.07 (2d ed. 1974)). However, in the context of dismissal for failure to prosecute, courts prudently decline to review adverse interlocutory rulings because the matter under review is the dismissal itself. Thus, in *Ash v. Cvetkov*, the Ninth Circuit explained:

> We are of the opinion that the general rule should *not* apply in this situation . . . It would be unwise to encourage all would-be appellants from interlocutory orders to delay for the purpose of dismissal for lack of prosecution and review of otherwise unreviewable decisions. . . . [T]he sufferance of dismissal without prejudice because of failure to prosecute is not to be

No. 17-50655

## III. CONCLUSION

The district court's dismissal without prejudice is AFFIRMED.

---

employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right.

739 F.2d 493, 497 (9th Cir. 1984) (emphasis added); *see also Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 192 (2d Cir. 1999) (Sotomayor, J.) (embracing the "general rule that interlocutory orders do not properly merge with a final judgment dismissing an action for failure to prosecute"); *John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 105 (1st Cir. 1998) (applying the "majority rule" that "interlocutory rulings do not merge into a judgment of dismissal for failure to prosecute"); *Marshall v. Sielaff*, 492 F.2d 917, 919 (3d Cir. 1974) ("If a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened."); *DuBose v. Minn.*, 893 F.2d 169, 171 (8th Cir. 1990) (citations omitted) ("Allowing use of such an avenue would circumvent the policy against piecemeal litigation and review."); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 366 (6th Cir. 1999) (holding that the court "need not review" interlocutory rulings "[i]n light of" the conclusion that the district court did not abuse its discretion in dismissing plaintiff's action for lack of prosecution and citing *DuBose*).

Such an approach is particularly appropriate here because Griggs should not be permitted, through recalcitrance, to obtain the review of the arbitration clause that he was expressly denied in the district court, a review that Congress has foreclosed under the Federal Arbitration Act. *See* 9 U.S.C. § 16(b) (disallowing appeal to be taken from an interlocutory order compelling arbitration); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (noting the "statutory policy of rapid and unobstructed enforcement of arbitration agreements").